IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| CONNIE HAMPTON, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 3:14CV00120-JJV |
| Commissioner, Social Security | * | |
| Administration | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Connie Hampton, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). On October 28, 2014, the Court held oral argument at Plaintiff's request. Mr. Greg Wallace, Esq., appeared by telephone for Ms. Hampton. Special Assistant United States Attorney Brock Cima appeared by telephone for the Commissioner. The attorneys are commended for their diligence in this matter. For reasons set out below, the decision of the Commissioner is REVERSED and REMANDED.

**I.     BACKGROUND**

On February 23, 2012, Ms. Hampton protectively filed for SSI benefits due to body pain, degenerative disc disease, carpal tunnel, anxiety, and a heart murmur. (Tr. 145) Ms. Hampton's claims were denied initially and upon reconsideration. At Ms. Hampton's request, an Administrative Law Judge ("ALJ") held a hearing on April 19, 2013, where Ms. Hampton appeared with her lawyer. At the hearing, the ALJ heard testimony from Ms. Hampton and a vocational expert ("VE"). (Tr. 23-42)  The ALJ issued a decision on June 7, 2013, finding that Ms. Hampton was not disabled

under the Act. (Tr. 10-18) The Appeals Council denied Mr. Hampton's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Hampton, who was thirty-eight years old at the time of the hearing, has ninth grade education and no past relevant work. (Tr. 25-26, 40)

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Ms. Hampton had not engaged in substantial gainful activity since February 23, 2012, and she had the following severe impairments: bilateral carpal tunnel syndrome and degenerative disc disease of the cervical and lumbar spine. (Tr. 12) However, the ALJ found that Ms. Hampton did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 14) According to the ALJ, Ms. Hampton has the residual functional capacity ("RFC") to do the full range of light work. (Tr. 14) Although a vocational expert testified at the administrative hearing, (Tr. 40-41), the ALJ determined Plaintiff had no nonexertional limitations and relied solely on the Medical-Vocational Guidelines. (Tr. 17-18.) Based on the Guidelines, the ALJ found Ms. Hampton was not disabled.

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

[2]420 C.F.R. §§ 416.920(d), 416.925, and 416.926.

### III.     ANALYSIS

####     A.     Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3]  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

####     B.     Ms. Hampton's Argument for Reversal

Ms. Hampton asserts the Commissioner's decision should be reversed because the ALJ erred (1) in finding her mental limitations were non-severe; and (2) in the credibility analysis.  (Doc. No. 11)

#####          1.     Mental Impairments

Ms. Hampton contends that she suffers from borderline intellection functioning, anxiety, and depressive disorders, but the ALJ erroneously found these impairments are not severe.  The ALJ concluded these impairments resulted in "no more than mild restrictions."  (Tr. 13)  He noted Ms. Hampton "prepares simple meals, takes care of her personal needs with some physical difficulty, shops in stores each week for two hours, manages her finances, and watches television."  (*Id.*)  He

---

[3]*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4]*Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5]*Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

also pointed out that, although Ms. Hampton alleged she has trouble paying attention and following instructions, there was no medical evidence to support this claim.

Ms. Hampton points out that the ALJ discredited the 2011 mental evaluation by John M. Faucett, Ph.D., and the later mental RFC and Psychiatric Review Technique form performed by Jon Etienne Mourot, Ph.D. (Tr. 297-299, 301-313.) Ms. Hampton specifically argues that the ALJ erred with regard to her borderline intellectual functioning. After personally examining Ms. Hampton, Dr. Faucett diagnosed her on Axis II with borderline intellectual functioning. (Tr. 217.) And after review of the medical records, Dr. Mourot concluded Ms. Hampton had moderate cognitive limitations. (Tr. 297-99, 311)

Although the ALJ gave good reasons for discounting Plaintiff's anxiety and depression, he largely failed to address her documented borderline intellectual functioning. (Tr. 13.) And in addition to the opinions of Drs. Faucett and Mourot, there is other evidence to support a conclusion that Ms. Hampton's borderline intellectual functioning limits her ability to perform work related activities. Specifically, the Court points to Ms. Hampton's testimony she completed only the ninth grade, had not earned a GED, and was unable to earn her nursing license after receiving the training. (Tr. 26.) The Court is also mindful that the record shows Ms. Hampton may have actually completed the eleventh grade, did not require any special education classes, and was capable of performing the job of office manager. (Tr. 146.) But this evidence was not developed, so important questions remain.

Accordingly, the Court concludes that the ALJ failed to develop the record with regard to Plaintiff's borderline intellectual functioning. The case must, therefore, be remanded for further development of the record. If, after addressing Ms. Hampton's borderline intellectual functioning,

4

it appears her impairment is "severe," the ALJ must utilize the services of a vocational expert at Step 5 of the evaluation.

      2.      Credibility Analysis

Ms. Hampton argues that the ALJ's credibility analysis is flawed because he based his decision "solely on the lack of medical evidence" and did not "identify any inconsistencies between [her] complaints and her treatment frequency, medicinal selections, and daily activities." (Doc. No. 11). Although the Court concludes the ALJ made an adequate credibility determination, on remand, the ALJ should address these concerns raised by Ms. Hampton.

**IV.    CONCLUSION**

A reasonable mind would not accept the evidence as adequate to support the ALJ's decision because the decision does not sufficiently address Ms. Hampton's borderline intellectual functioning. For this reason, Court REVERSES the decision and REMANDS the case to the Commissioner for full development of limitations posed by Plaintiff's borderline intellectual functioning. If it is determined this amounts to a severe impairment, a vocational expert must be utilized at Step 5 of the evaluation.

This is a "Sentence Four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 28th day of October, 2014.

                                                      JOE J. VOLPE  
                                                      UNITED STATES MAGISTRATE JUDGE